If you would please approach the podium and tell us who you are and who you represent. Please call the case. 11-2971 P.S. Houpt, P.C. v. Main Street Village West-Part 1, LLC and call the case. For the appellant. Good morning. Arthur Holtzman for the appellant. Arthur Holtzman. Good morning. I'm David Golan, counsel for Tatum & Shea Ltd., one of the appellees. Good morning. Eric Anderson, counsel on behalf of appellees J.J.R. Holdings, MD Financial Bank, and Old Second National Bank. Matt Marty, here on behalf of North American Savings Bank & Hilliard. And have the three appellees decided how they want to split their time? Yes, Your Honor. I will be taking the principal lead on the argument. Mr. Anderson has asked for a few minutes to talk about a couple of issues, particularly to his client. Okay, very good. Well, each side has 15 minutes, but we don't look at our watches. Just make it interesting and we'll let you talk. Thank you, Your Honor. Anytime you're ready, Mr. Holtzman. Thank you. May it please the Court. Arthur Holtzman for the appellant, Peterson & Haupt. In law school, I learned that with statutory interpretation, in order to determine the meaning of a statute and the intent of the legislature, one should first look to the plain language of the statute. That is what Peterson & Haupt has done in this case. However, the interpretation and additional requirements which the trial court and the lien claimants have imposed upon the Attorney's Lien Act have distorted it and seriously limited its effectiveness to attorneys. In reading the briefs and looking at the cases cited, and each of us judges doing our own independent research, I could find almost no cases describing how this should work. Am I mistaken? No one has cited a case as to how the Attorney's Lien Act should work in a situation where the property has transferred. I agree with you. There you go. And so, that being so, first, did your firm represent these people at the closing? Whichever closing it was, the first one. After you got the specific performance judgment, were they still your client? They were still our clients. They didn't cease to be our clients until later. I know we had an associate at the closing, whether she was the only lawyer there for the buyers. That I can't recall. But you were the firm that represented the buyers at the closing, right? We were one of the firms involved, yes. Okay. And yet, I've only done about six, just speaking for myself, about six real estate closings. I was a prosecutor for years. Generally, my experience, you would fill out a form and say, here's where the money is going to be dispersed. That didn't occur here, and it didn't have your attorney's fees at all on it. Would that be right? It is correct that at the closing there was no disbursement for attorney's fees to Peterson. No, that's correct. There was an agreement, though, allegedly, that was made, a promise that was made to your client at that time. We were negotiating with our clients to get paid. Yes, sir. But there was no other agreement other than this written representation in your brief? They asked to get him paid, although, of course, we have an engagement letter. We were retained by them. We sent them invoices, but vis-a-vis, after the closing, we were talking to them. Yes. But during the closing, and I don't know that this is a supposition you can answer since the firm was involved, it appears that there was a waiver that the title company insured over your lien. That's an interesting point, Justice Simon. When I asserted on January 17th the attorney's lien, I carboned the title company because I was always taught, poor people are going to let know at that point. Why not? And when the seller's counsel, Mr. Rackos, wrote me, it's in the record now, and I think it's January 23rd, he said, we don't care what you're asserting in the title company. You're absolutely right, Justice Simon, this is going to insure over it. They don't care about it. So I was given the back of the hand by the seller's counsel and by the title company after having properly asserted the attorney's lien on the property. But why would you miss this liquidating event? Among other things, we were threatened by one of the buyer's counsels saying if we stop or in any way impede the sale, we'll be sued. But we weren't adverse to our clients in the sense that we were getting ready to sue them. We didn't sue them for several months later. And the philosophy was let's try and work it out. They're going to get some property. They're going to flip it. They have other obligations. They have other debts. But they're going to try and work out a payment plan. That was the firm's philosophy then and probably still is today. The last thing you want to do is sue your client, your former client. So it was just based on trust. Absolutely, Justice Simon. Counsel, why didn't you follow up with the title company? Well, we were told the title company didn't care and found it meaningless. But told by not one of their agents. No, told by Mr. Rackus, the seller's counsel. We didn't assert it. Insofar as Justice Connery is asserting a claim, we didn't assert a claim against the title company. We viewed our remedy as, one, maybe we'll work out a deal with and try to with our clients, and then, two, we had in our back pocket, as well as suing our clients for the accrued fees, we had the lien, which quite frankly, as Justice Quince noted, we thought it meant something, but we weren't sure exactly what it meant until we did further research and got further into the case. Counsel, let me ask you this. As far as construing the attorney lien act, there are certain acts that provide for foreclosure, mortgage, real estate broker act, mechanical lien act, things of that nature. The attorney's lien act does not provide for foreclosure, does it? In its words, and if you go back to my opening, if you look at the plain language, it doesn't say what you do except it describes a procedure for going to court, having the court determine what it attaches to the amount and the date, the priority date. These other statutes specifically allow for that relief, and this one does not. And I submit we would be adding a gloss to say that it doesn't. In the Philip Morris case, among other cases, our Supreme Court has said that this act creates new rights which have heretofore not been recognized in this State. And one of the arguments that we make, we made in the trial court and that I make here today, Justice Connors, is it's not a mechanics lien. The attorney's lien is neither fish nor fowl. It's a different kind of animal. And going back years since it was created, it has been treated differently. Even in the, I think it's the Clark case, the court talks about mechanics liens are to foreclose upon it. There are attorney lien cases where other people, other claimants are asserting other liens, and the court looks to see, oh, was this attorney lien perfected properly? Let's look to see which one was perfected first, and that one gets the priority. I submit, Justice Connors, when we go to the plain language of the act, and the act says, such lien shall attach to any property which may be recovered on account of such suits, claims, demands, or causes of action from and after time of service of the notice. So when the Illinois legislature drafted the Attorney's Lien Act, I submit what I learned is we've got to look at the exact language of the act because it must have some meaning. It shall attach to the property from and after the time of service of the notice. But you're suggesting attach equals you have a right to foreclose. Absolutely, Your Honor. Based on what, though? Based on what? Well, in the cases where it attaches to the property, even in the Catherwood case, which everybody seems to think is my favorite case because it's at least one that talks about the attorney's lien and property. I don't have a lot to go on. This is not a, our briefs are not humongous, as I'm sure the Court has seen. There isn't a lot out there. But even in Catherwood, where I think Mrs. Catherwood dies and the poor attorney wants his $5,000 or $6,000, I still like the language of the Illinois Supreme Court. Attorney's lien followed the claims into such property and the lien was impressed thereon. I submit to this Court that the Supreme Court saying impressed thereon and the statute saying attaches to the property has meaning. Attorneys, I mean, we're like the shoemaker who has holes in his shoes. We don't have a whole lot of remedies or things we can do when we aren't being paid by our client. We certainly can have a retaining lien if we have files and records. We have that by common law. And then we have a statutory charging lien. As far as I know, we don't have any other liens. You can sue for fees. But from a lien standpoint, either you retain some books and records and hope and pray that that gives you some leverage that your client pays up, or you have a charging lien. This is the only statutory lien we have. But all the Catherwoods were involved in that action. They were involved. Here we have third parties. You might call them innocent or unnoticed or whatever, third parties, unlike the Catherwood case. You are correct, Justice Katz. And is there any distinction to be made there? Not if it attaches to the property and is impressed thereon. We are a state and our laws require people to check things out. Well, in this instance, you filed your first note. How many other parties to the sellers now in the specific performance lawsuit did you serve? My notes say you served Hickory Properties. Now in terms of this being the sellers, did you serve anybody else at that time? Again, it's 11 months after your specific performance lawsuit is settled. In the January 17th letter, I know we served, we carboned Mr. Rakos, we carboned our clients. Your clients. Carboned the title company, and we served Mr. Giannikas as Hickory Properties, Inc., of Delaware Corp., as trustee, yes. So any other defendants, though? Many sellers, I would call them. Well, the Hickory Properties, under Lakeside Bank as trustee, was the seller under. . . The only seller? The only seller, as I recall, yes. Going back to Philip Morris, as you say, this is a statutory interpretation case. In there, our Supreme Court in reading talked about that statute, and that, of course, was a question about attorney's fees in a tobacco settlement case. Yes. So talk about jurisdiction of the circuit court. This includes, so the attorney's fee is perfected upon petition in any court of competent jurisdiction. This includes the circuit court that heard the underlying matter, so in this case the circuit court that heard the settlement, the specific performance case, or the circuit court that has jurisdiction over the money recovered. It continues. Here, they perfected the lien, meaning the attorneys, and petitioned the circuit court to adjudicate it. The circuit court has jurisdiction to adjudicate the lien either because it heard the underlying matter or because it has jurisdiction over the settlement proceeds. What did Judge Taylor have when he had this case? What jurisdiction? He wasn't the one that was involved in a specific performance action, was he? No, he was not. And he didn't have any proceeds from that, any jurisdictional proceeds on that, did he?  We sued the . . . How did he have jurisdiction over anything then? Because we sued the sellers who were the principal obligors of the attorney's fees, who were the ones that we gave the notice to, and we sued them, and I think we sued Main Street, which was the party that the property was flipped to at the January 25th closing. And Judge Taylor determined only certain issues. He determined the amount, he determined that it attached to the property, and he determined that the perfection date was January 17th. When the issue came up, when we learned later on that there were mechanics lien proceedings over the property before Judge Curcio, actually I think it was Judge Quinn, and then I think it went to Judge Curcio, we intervened or we went into the mechanics lien proceeding where the property was. Judge Taylor said, I'm not going to decide priorities among mechanics lien claimants, banks, et cetera. You can go to mechanics lien court, Mr. Holtzman, and resolve it there. So the answer to your question is to the second part, the property was clearly before Judge Curcio, and that's where we went. What property was in front of Judge Taylor? Taylor's own rule in your favor. What property was in front of him so that his order would have any effect on any of this? How did he have jurisdiction to do what he did? When we went before Judge Taylor, when we sued, we sued the parties that had acquired the property, the parties that we'd given notice of the attorney's lien. We didn't know whether they still possessed the property or not. But how does he have jurisdiction? According to Philip Morris, he has to have jurisdiction over the suit, which in this case is a specific performance suit, or the settlement proceeds. I understand what you're saying, and I would point out the lien statute says specifically, on petition filed by such attorneys or their clients, any court of competent jurisdiction shall have on not less than five days' notice to the adverse party, shall adjudicate the rights of the parties and enforce the lien. And that was explained by the Supreme Court in Philip Morris. I mean, two courts, one court where the underlying lawsuit is filed, or a circuit court that has jurisdiction over the settlement proceeds. Neither one of which appear, Bill Taylor had anything to do with. When we file, Justice Quinn, we don't know that there are mechanic lien proceedings involving the property. Well, again, you just said a minute ago, though, that we are a notice state, that buyers and people who sue have to know about notice. They are required themselves to seek out notice of what's happened to a piece of realty. But if you're right from what you're suggesting, then when we in the I don't take it badly. Go ahead. Well, my point is It's nothing personal. Go ahead. My point is, so we go before Judge Carolyn Quinn, then we go before Judge Curcio on mechanic's lien. Yeah. So Judge Curcio or Judge Quinn can say, Mr. Holtzman, let's not even get into who it applies to. We're going to have you reprove as to these other parties that you have the lien that it's in this amount and that it attaches to the property. I read the statute to mean if I'm dealing with Old Second Bank, if I'm dealing with Tatum and Shea, they weren't there when we asserted the lien. Back to your prior point. Right. The only ones who can make any arguments as to whether or not my January 17th letter, whether or not it applied to the property, whether or not, go to the amount itself. What information, what relevancy would Tatum and Shea, Old Second, any of those other lien claimants or banks, what information would they have to challenge the Peterson and Hopp lien that we went before Judge Taylor? I submit what Judge Taylor did is correct. He said, I'll determine the amount that applies to the property, but when you're determining priority as against the lien claimants and the banks, I think I don't want this headache. You go before the mechanic's lien court where, as you point out, Justice Quinn, they are adjudicating interests in the property. Counsel, before the who comes first in the lien, line of liens, what about the perfection of the lien? You perfected that lien and the court allowed it to be perfected back to January 6th. Is that correct? January 17th, yes. Who got notice, though, on that request to perfect that lien? The parties to the law division litigation. Right, but not the subsequent purchasers. No. But an interesting point. In 2009, I get notice from Kavanaugh Electric, out of the blue, and I get a phone call from their lawyer saying, Mr. Holtzman, you ought to be aware we're adjudicating lien interests on the property that you've apparently asserted an attorney's lien on. How did you know about me? Did a pen search. Your list pen has found that you'd recorded this. So now I go before Judge Quinn, Judge Carolyn Quinn, I think, and then Judge Persio, and the comment was, let us know what's happening. At that point, any of the mechanic lien claimants could have intervened before Judge Taylor. But what I'm saying is, how could Judge Taylor even have perfected that lien at that time? Because you didn't notice anyone else who may have had any interest in it, other than your client. No, I understand that. And my response, Justice Connors, is that the other lien claimants were given actual notice when I went to court to say, listen, I'm adjudicating the amount of the lien and the perfection date. But when was that? When were they given that notice, that actual notice? There's a transcript we attached to the record from, in my memory, it was like December 2009 before, I think, Judge Carolyn Quinn. Right. So that's 09, and it was already perfected in 06. But he didn't rule until later on. The ruling didn't occur. The ruling occurs when we go before Judge Quinn. He determined. But technically these folks don't know that litigation is really going on. They don't know what's going on. That's what I'm saying. You say they have an affirmative right to check your piece of litigation to see how they're being affected on it. January 16, 2009, Kavanaugh serves notice of its subcontractor's lien on Peterson and Howe. Judge Taylor doesn't find that the attorney's lien attaches to the property until June 9, 2009. That's five months later. I submit that certainly. And he made it non-pro-tunk on November 3, 2009, so that anybody prior to November 3, 2009 would have any notice unless you served them. Would that be right? In November 2009, he said that the date of attachment of your attorney's lien was January 17, 2006. Right? I would only differ, Justice Quinn, when you say non-pro-tunk. I think the statute is the attachment date is when service occurred, and I think that's what the case law says interpretation of the attorney's lien statute is. Yes, he made it a date prior they were involved. But, again, they had notice of what was going on, actual notice. And I noted in, I think, my opening brief that it was interesting that now people, the other parties are complaining about, is it race judicata, is it collateral estoppel, et cetera, et cetera. But no one sought to intervene before Judge Bill Taylor. A very nice gentleman who I'm sure would have welcomed more people coming and asserting arguments if they wanted to. No one did. Because Judge Quinn and then Judge Curcio would say in the mechanics lien court, what's the status, Mr. Holtzman, what's happening before Judge Taylor? Well, I suppose the concern I have is what are you doing in mechanics liens court? An attorney lien is dramatically different, I'd suggest, than mechanics liens. An attorney lien is usually placed where we see them. And, actually, it never plays out this way. That's why there's so little case law in the area. Are filed by plaintiff's lawyers, notifying the defense lawyers and the insurance companies, by the way, if you settle with my client, I better have my name on that check, too. And so that's how it works. Because then that's what the statute reads, is you're to put a notice to the defendant, not to your client, to the defendant, the person you are suing in the underlying lawsuit. Notice is sent to them that you, the attorney, have an interest in the proceeds of that lawsuit. Not something else, not a billable hour, but proceeds of the lawsuit. And here it's done before the case is settled or at settlement. Well, can you cite a case where it occurred after settlement? But certainly Can I cite a case where it occurred after settlement? Certainly. That's the question. Meaning a resolution? Oh, I'm sorry, yes. I see you're asking for my permission. No. Yes, that's the question, yes. Can you cite a case where an attorney in lien was filed after settlement and it was held to be okay? So not contemporaneous with, but afterwards. But we, is the court suggesting that we filed it after the resolution? After the proceeds are done, yes. That's the issue, is it not? So after the land is transferred hands, again, not just from Hickory Properties, but on to Main Street, which I understand is half of Main Street is your client. I mean, half of your clients were part of Main Street. But they sold this to other people, normal human beings buying homes. Now I understand your question. We filed it before there was any transfer of the property from Hickory to anyone. So we filed it before the defendant seller had transferred it. Did we file it after other transfers? No. We filed it while the property was still in the hands of the original seller who I sued before Judge Mary Ann Mason, we filed our notice of attorney's lien. The only thing that had happened was Judge Mason had ruled, and I think in August of the prior year, three acres had transferred, and we had not asserted it before that there was a minor transfer. When did you serve Hickory? I'm sorry? When did you serve? You're talking about Hickory. Hickory, January 17th. Okay. And you served them, and when was the closing on the property? January 25th, is that right? Okay. Because Mr. Rackos writes me on January 23rd and says, we're ignoring everything. The closing is going to go forward. Somebody from Stahl Cowen says your letter better not screw up the closing. There's a little confusion in the record. I think the deeds were backdated to January 12th, but the funds from Old Second Oil, that didn't flow until January 25th, and I think the recording occurs later in January. But go back to your example, the typical PI case, which is what we all think about when we think of attorney's liens. Obviously, the PI lobby has done a little bit better than those of us who do commercial litigation seeking real estate. But they assert it early on before they've won anything. They assert it and say, Justice Simon, you're an insurance company. If I win, you better know that I've got an interest on that. And we're talking there about if it's a settlement or there's a recovery of money. And I submit while the attorney's lien clearly applies to money, to property, to a number of things, it's a little bit different animal, and the mechanism, it works a little different when it's property. Because while it will attach to the proceeds, attach to the insurance tax, here it attached to the property. And I submit, Justice Quinn, that's got to have some meaning. Again, if we go back, I'm limited in what I can go back to, but if we go back to Catherwood, impressed upon the property, attached to the property must have some meaning. It doesn't say footnote. But if there's some subsequent transfers or sales, you, plaintiff's counsel, are in trouble. You've got some problems. So in the timing, I'm sorry. But your first filing to give notice was a lispendence notice, two lispendence notices. After we filed the, served the letter. Right. That was belt and suspenders, Justice Simon. The act does not require a lispendence. We now had a lawsuit against our clients, so we did a lispendence. But then when did you go through the time and write on the recorded entries that were made of recorded liens, in terms of where your position was? In your opponent's briefs, they said the summit had no interest in the subject property at the time the attorney's lien litigation orders were entered regarding summit's property. It is correct that now when we trace the transfers of the property, it's I think Justice Quinn's point, by the time Judge Taylor rules in favor of Peterson and Howe, that property is no longer in my client's hands. That is what it is. That is a correct statement. But the act basically makes you a partner with your attorney. The attorney and the client. But when the client lost the interest in that asset, what was left to be acted on under the act that protects your fees? And I submit, I understand your question, and I submit that attached to the property and pressed upon the property has to have meaning, and until we are satisfied, it's there. That I submit that otherwise it would allow the client to commit a fraud or to just ignore the act and make transfers without knowledge to the attorneys, and in violation of the attorney's lien. Now, I understand the panel's questions. It's an interesting case because we are presented when we are going before Judge Taylor, my former client doesn't own the property. I don't dispute that. But again, the ultimate effect is that there was no asset to liquidate in order to get your fees paid. There was. The property. The Orlin Park property, the nine and a half acres. Justice Simon, I submit there was property. It may have been in somebody else's hands. There may have been other lien claimants. But to me it's no different than if ten years later some chase, J.P. Morgan Chase makes a loan and didn't do its due diligence and maybe there were other liens on it. In the we cited the Seventh Circuit case. We supplemented the record. And the Seventh Circuit cites a turn of the century, the last century, Illinois Supreme Court case that talks about the Conveyance Act. There's no requirement only in certain situations that you follow the Conveyance Act. And in that case, as I recall it, there was a divorce between a husband and wife divorce. The property is being split 50-50. And then the wife says she's going to buy the property. Well, she stops making payments. One of her children from a prior marriage uses it as a collateral. And there's a foreclosure proceeding. The husband finds out. He has no notice of this and says, I want to intervene in the federal court proceeding. Trial court says no. The Seventh Circuit says no, based upon Illinois law. There's no requirement that you give actual notice. There's constructive notice because the lender should have traced back to find out how the wife and the wife's children or the ex-wife's children had an interest. So I submit that at least when we're looking at early 20th century cases and apparently good case law in Illinois, that the party who's exerting an interest, the lien claimants, has an obligation to, I think it's reasonable diligence, and that's constructive notice. So there are situations where people are loaning money, encumbering, in this case, real estate, and they may not know, may not have had actual notice of what occurred before. But aren't you creating a covenant running with the land when you do this? In other words, under that scenario, when would this ever end? When our claim is adjudicated and satisfied, yes. Well, that was my question as well. Sir? Excuse me. Your claim was adjudicated. But not satisfied. Right. But in order to get the satisfaction, you have to have a foreclosure to be liquidated. Correct. But that never happened, and the client no longer possesses the property. Under the Act, you're partners, and the Act doesn't take it any farther than that. If Bank of America early on, let's say in 2006, had made a loan but somehow didn't record it, but everybody could find out, maybe they did a loose pen, whatever they did, and years later, then they've never foreclosed, they've never gone after it. Ten years later, if they find out the property is being sold, they still can assert their claim. They're not barred just because the property has changed hands. If they can prove they did what it is because they're a bank and we then have to deal with other acts, they have a recording. But the fact that passage of time or that the property has changed hands, I submit, doesn't in and of itself defeat the attorney's lien. Again, I go back to Justice Quinn found my quote from Philip Morris and other cases. It's a strange animal. It's different. It's giving rights to attorneys that heretofore hadn't been known. Does the Conveyance Act apply? No. But it does apply to mortgages, does it not? But it does not apply to this. Right. But going back to your saying, well, it's only fair since banks can go back ten years, that's true as long as they comply with the Conveyance Act. Because, again, they have to give notice to people or under the Conveyance Act, they lose their put at the end of the line. Why doesn't it apply to your client? I'm sorry. Why doesn't it apply to you? Because in the Banker's Trust case that we cite, which cites Anthony v. Wheeler, good old case, Illinois, 1889, the court said that the recording of the Illinois Conveyance Act Well, it's an unpublished federal case, but the 1888 case is not, so go ahead. It is. The recording requirement of the Illinois Conveyance Act is not absolute. A prior unrecorded interest in property is void against subsequent creditors and purchasers only if the subsequent parties are without notice of the prior interest. And then in the case that you're referring, Anthony v. Wheeler, the old Illinois Supreme Court case, it has long been the law in Illinois that subsequent purchases of property are chargeable with constructive notice of unrecorded interest in the chain of title, which with the diligence and investigative skills of an ordinary person would be readily discovered. That's Illinois Supreme Court, 1889. So, Justice Connors, no, there is no requirement to follow the Illinois Conveyance Act. We didn't, and I don't believe we were required to. But the Liz Pendens Act, I mean, you would suggest that that goes on forever. Once you get a constructive notice under Liz Pendens, it never expires. I always learned it's sort of like a scale. I don't concede the applicant that I was required to do a Liz Pendens notice, but I'll do anything I can, obviously, to improve my firm's case. And so, as I suggested before. Well, other than bringing it up at closing, right? You sent out a lien notice one week before closing, and then you mentioned in your paragraph 377 of your complaint, oh, we chose not to bring it up at closing, right? That is the fact, Your Honor. Okay. We did not raise it at closing. We didn't want to jeopardize the closing. We were talking to our clients about the decisions. Why don't we have some time for the other side, and you'll have five minutes for reply. Okay. Thank you very much. Sir Golan? Thank you, Your Honor. May it please the Court. Again, David Golan on behalf of Appali Taim and Shea Limited. It appears to me in listening to the argument that it really is Peterson and Haupt that's trying to put in additional language into the Attorney's Lien Act that isn't there. They have accused us of doing that. I think that's what they are doing. There's a lower court found that there simply is no provision in the Attorney's Lien Act that permits the enforcement of an attorney's lien on real property. I think Peterson and Haupt speaks in terms of attachment, and Justice Condos, as you pointed out, as we pointed out in the lower court too, a confusing attachment with enforcement, and certainly it doesn't equate to foreclosure. As was pointed out this morning, you have to contrast the statute to other statutes which specifically provide for foreclosure as a remedy. This statute does not. In fact, when you look at the language of the statute in terms of enforcement, it speaks towards the end as requiring notice to the adverse party. An adverse party in this context refers to the party that was adverse to the attorney's client. There isn't even any mention in there of notice to other third parties. This statute clearly does not contemplate enforcement of an attorney's lien on property once that property is in the hands of third parties. It's a charging lien, and the Supreme Court of this state in Baker v. Baker did the best job of explaining its purpose. It does create new rights, as Counsel for Peterson and Haupt explained, but those new rights were to provide the attorney with an interest coextensive with its client with respect to the claim that it was entrusted to pursue. That's the context in which the Court talks about new and substantial rights. It goes on to state that it attaches to any verdict, judgment, or decree of the proceeds of the settlement. It's a lien upon proceeds only of the settlement or the cause of action. Now, the Catherward case, which is not a foreclosure. Let me ask you. This gives a right to property. The Act gives a right to property, which would include what's happened here with Summitt. And then it says, but it's open-ended. It says that once the court, which was done here, the court has the power to enforce that lien. So it's open-ended, but read literally, the court could basically use any mechanism it wished. I would suggest that the answer to that is a yes, but. It can't override the provisions of the Conveyance Act that specifically deal with real property. And let's compare what they did in Catherwood, which is the only case that's been cited to deal with real property. That case was not a foreclosure case. Yes, in that case, the court did say, we're going to impress a lien upon the property. In the event that the client does not pay the fees, we're going to have the property be sold in order to provide for that payment. That was an equitable remedy that was proper in that context, because there weren't any other third parties involved. No one else would have been harmed. No one else's rights would have been trampled on. That's not the case that we have here. Catherwood simply is not precedent for imposing the lien subsequent to the client's ownership and certainly not to allow foreclosure of that lien. Foreclosure is a separate process that's provided for by the statutes of Illinois. I'm not sure. In reading your brief at page 8, it said you questioned how this could be known to third parties, the lien. One was the letter to counsel regarding a loan. The other was the lispendence filing. Another was through the title company at the closing. And then your brief then says it suggests that the lien is unenforceable. Why is that conditioned that way? I'm sorry. My brief says that the lien is unenforceable. It's on page 8 of my brief? I'm sorry. I have a lot of briefs. Yes, sir. Thank you. Well, if you'd like to answer that question, if you want your other counsel to do it, you're more than welcome to. Yes. I'm not quite sure I understand the question. It was just, it created a certain influence of being tentative. I can tell you from my standpoint, I am not tentative at all. There was absolutely no notice given to Tatum and Shea of the lien. As we pointed out in our briefs in the case before Judge Taylor, we were not made a party. And we cannot be found to be bound by those orders. There was no privity of our client with respect to Judge Taylor's orders. Indeed, as we point out in the complaint that was filed by Peterson Health, it doesn't even appear that they made Judge Taylor aware of the fact that their clients no longer held the property. Counsel, what about the list pendants, though? Counsel argues, your client argues that that list pendants, once filed, was noticed to everyone down the line. It's simply not the case, Your Honor. The Illinois state law is very clear that parties are only chargeable with notice, constructive notice of what is within the grantor-grantee index, which is the official index of the state. If there is something that would put them on inquiry notice, courts have also found that to be a charge on which they must do further due diligence. But Peterson Health has pointed to no fact, and indeed there is no fact, which would have put Tatum and Shea on inquiry notice at the time that they purchased the property, that there was this attorney's lien out there asserted. Well, they pulled a title report, did they not? Tatum and Shea, there's nothing in the record to suggest that, Your Honor. Did it show up on the title report, the list pendants? A title report that Tatum and Shea may have pulled at the time of their closing, I do not know. But also, I do not know. And I would also submit that that's not a relevant fact at this point, that the property had already been transferred out of title by the clients of Peterson and Howe at the time the list pendants was recorded. The Illinois law is clear that where the record title holder is not named in the list pendants, that that does not provide any constructive notice upon further parties. And so any suggestion that Tatum and Shea had constructive notice of this attorney's lien is simply not founded. I think that I've covered all the principal points that I adhere to. If there's no further questions, I'll cede time at this point to my co-counsel. That's fine. Good morning. May it please the Court, my name is Eric Anderson on behalf of JJR Holdings, MB Financial, and Old Second National Bank. I just wanted to touch briefly on the list pendants issues just addressed a little bit by my co-counsel. And should the Court get that far, we wanted to make sure that this was spelled out. Like my co-counsel said, there is nothing in the record to show that there was any actual knowledge, but there's also nothing to show that there's any constructive knowledge which would be required to put these employees on notice. An encumbrance on the land can only be in the chain of title when it's recorded in the grantor grantee index and only then can a party be chargeable with knowledge thereof. Here, both list pendants that were filed by Peterson list only Summit and Peterson as parties to the litigation. And since Summit nor Peterson were the record owners of the property at that time, this cannot be held to be constructive notice to the subsequent purchasers, which are twofold down the line when you're talking about our appellees. The List Pendants Act specifically requires that all parties to litigation be listed for this reason. Specifically, the Illinois County's Code takes those names that are on that list pendants and uses those for the books and records which form the basis of constructive knowledge. So when the subsequent purchasers in this case were viewing the list pendants index, they would not have discovered either the litigation that Peterson filed nor their lien simply because the record owner was not on those list pendants. And working sort of the other way, these people bought from Main Street Series 2 and Main Street. Searching those names would not have come up with it either since Main Street was not listed on the list pendants. And we've cited the case law that specifically states that the list pendants that does not list the record owner is not considered within the chain of title. And so if it's not within the chain of title, obviously it cannot act as constructive notice. I think the larger point that not only this issue but some of the other issues that have been discussed this morning is these complications and all these different fact patterns and scenarios that come up in our briefs and in this morning in argument when trying to determine if an attorney lien does or doesn't attach to land, does and doesn't run with the land, I think just goes to show that the act was not written for it to be applied in this way. But rather to be applied to the proceeds from the settlement or judgment. If in this case the proceeds were in fact the right to buy property, then it seems logical that, you know, so you have the attorney, as you suggested, the attorney is sort of a co-partner with the client. They could do one of two things. They could either both take title to this property when it's sold, which was the order of the underlying court specific performance order that the property must be sold to Summit. Or Peterson could have, when the property turned around and was sold to Main Street, could have sought the profits from that sale to satisfy its attorney's lien. I think doing anything other than that and enforcing against third party bona fide purchasers who are in some cases twice removed from the client is not supported by the text of the statute. And particularly given the, as my co-counsel suggested, that there are no provisions for notice in the Attorney Lien Act to third parties. In comparison with the Mechanics Lien Act, which we've discussed this morning quite a bit, it goes to great pains to make the difference between attachment and enforcement. And there's a list of things that must be done to attach, and that's great for the record owner. But if it's going to go beyond that to third parties and future lien orders or banks, there are a second set of things that must be done so that proper notice is given. And like my co-counsel mentioned, there's no case law, nor does the Act state that the attorney lien would run the land like a mortgage or a mechanics lien. In fact, given in the Baker v. Baker case that states that the attorney only has an interest in the proceeds that is coextensive with the client, once the client divests itself of any interest in property, it stands to reason that the attorney has also divested of any interest in that property. And then the only thing it could do is go after the profits, which is the interest that its client now has, holding onto the profits from that sale. As they've admitted in their papers, they could have prevented or enforced their lien against the property while it was in the hands of their client, or they could have prevented the sale to Main Street. Counselor, I don't disagree. The lien was perfected against Hickory at Summit, though. It was perfected. Well, the lien, as in the January 06 letter, if you're referring to that, it was perfected against Hickory, who was actually not the owner at the time. It was actually the trust. Hickory is the beneficiary. So there's an argument there that that letter wasn't even proper under the Attorney Lien Act. But I think the problem from when we start from there is that what was the purpose of this letter? Because this isn't a normal case where you're sending to the judgment debtor of your client saying, I have an attorney lien. Before you pay out X amount, you know, I get my share. Here's a case where the order was they have to sell property to the client. So until the property was sold and the property was paid for, there was no proceeds in this case for the lien to attach to. So it was unclear what the purpose of that letter would have been. The seller, Hickory and the trust, didn't have a choice but to go through with the sale as directed by the court, and any profits they received from that sale were clearly not subject to the attorney lien for fees owed to that attorney by the buyer. So until that – Could the purpose just have been to put them on notice, you can do the transaction, but save the money for us? Well, but the money would have to have been saved by the client, not the seller, because Peterson had no right to the proceeds of the original sale from Hickory to Summit. You know, because that's not – Hickory is not the client. They don't owe anything to the firm. It was only when Summit turned around and sold the property that the asset became fungible, which is really the only way an attorney lien could ever be satisfied. So in this unusual case when we're talking about the proceeds being an actual piece of property, there was really nothing else to do but wait until that property was resold and then take action against the profits. That was not done in this case. Peterson has said the reason they didn't do it is they relied on a promise from its client that they would be paid. I would submit that instead of taking advantage of certain avenues they had up front to get their attorney's fees paid, they relied on this promise, it didn't work out, and it's unfair to now try to enforce the consequences of that decision on third-party purchasers who had no initial involvement in the case that led to the attorney's fees. And you explain in pages 12 and 13 of your brief the avenues P&H could have taken to make sure they got paid, notably filing a notice of their attorney lien rather than sending a letter to a beneficiary of a trust, going into court and filing against their clients or even the sellers, because we have to have these things decided within five days, and they chose not to do that as well. Is that right? Correct. And that's the point, is that there were avenues that they could have taken. They instead chose to trust their client when the client said, I'll pay you. And unfortunately that didn't happen, but I don't think there's anywhere in the Attorney's Lien Act that would say that you can now lien land what's one and two and maybe three times removed from the client to go back and try to recoup that loss. And that's the only point I wanted to make. If you have any further questions. Thank you. Thank you. Briefly, Mr. Holtzman. If I may. Are you applying only the arguments? Your Honor, cited Philip Morris. Philip Morris says the lien attaches from and after the time of service of the statutory notice. With respect to the court, the Philip Morris court said once the attorney's lien is perfected upon petition, any court of competent jurisdiction may adjudicate the lien, citing the statute. This includes the circuit court that heard the underlying matter or the circuit court of jurisdiction. Your Honor, I submit, Justice Quinn, that it's not limiting language. It doesn't say only those two courts. It just says this includes. Judge Curcio's memorandum order said, I don't see a procedure for foreclosure and I don't see how this can apply when there's been transfers of property. She did not adjudicate or make any rulings on whether there was notice, whether there was constructive notice, whether Judge Taylor did anything properly or improperly. She assumed for the sake of her ruling what has been appealed that everything was done wonderfully and maybe everybody has notice. She says, I can't see a way to foreclose. I can't. So she's doing a statutory interpretation and technically that is the order that was appealed. That may be, but we have to look into our own jurisdiction. And how do we have jurisdiction over this? I don't disagree. Taylor didn't have jurisdiction over this. How are you here? And, again, I would disagree. Well, I agree with the quote you have from Philip Morris. They go on in the next paragraph or two paragraphs and say, because that was a jurisdictional question, how was it that this case, the attorneys case, didn't go to the court of claims where the legislature could decide that the plaintiff's lawyers got zero? Right. Well, they said, well, the circuit court had jurisdiction. And they explained it the way you explained it and then two paragraphs later said, this circuit court had jurisdiction for either one of those reasons. And I would submit that in the act when it says any court of competent jurisdiction, that Judge Taylor was a court of competent jurisdiction. And would that be at any time five years later he decided he wanted to act on this notice, this letter you sent to a beneficiary of a trust? Would that be okay? I don't see any limitation. Now, wouldn't that destroy the world? That's why we have oral arguments, Frankie. So under your theory, you're arguing to us that attorneys have a never expungeable right to file attorneys' liens in lawsuits regarding attorneys' liens years after placing them on real estate, years after the real estate closing has been held and the property has changed hands several times. Well, if the lien relates to the property. Right. You can't put it on my house. You'd have to put it on the property your client sold. Would that be right? Assuming that the statutory provisions had been met, because there must be meaning to attaches from and after the time of the service of statutory notice. We haven't seen a case that said, but we're going to put a time limitation on this or we're going to say this only applies for several years. How about a notice limitation? How about the idea of third-party notice? You haven't seen any cases on that yet either, have you? But when we cite the Anthony case, if the court is concerned, and I'm not going to concede the point that there was required notice to the third parties, but if there was, then the fact that the reasonable inquiry, or as Anthony talks about some due diligence, would have discovered one. The court is correct. My letter was carbon to two people at Chicago Title and Trust. And you see sort of a tap dance. But not to the bank, not to the trustee, right, to the beneficiary of the trust. And again, that wasn't really, I mean, it was raised at her oral. We know how to read. Yeah, no, we served Hickory, but we served Mr. Gianicus. But it was served, the letters addressed to the beneficiary under the trust. Hickory. Yes. Hickory. Yeah. And Mr. Rackos, who represents the sellers, wrote me and called me. So they obviously had notice. But none of that, nobody raised that issue before the Mechanic-Sling Court and said we have some challenge that we want to present evidence that there wasn't proper notice. That was, you're correct, before Judge Taylor. The act itself begins by saying attorneys at law shall have a lien upon all claims. It doesn't say you've got to do something special. It says we, the legislature of the State of Illinois, have created this act so that attorneys shall have a lien for the amount of any fee. And you have the whole paragraph there dealing with, as I recall, the Health Care Services Act and other acts. So then you get to the second paragraph to enforce such liens. So the first part of the statute, and I submit, Justice Kuhn, we're here. It's a statutory construction case. It is a case of first impression as to what the heck does the charging lien, the Illinois Attorneys Lien Act, mean. Are there limitations? Are there restrictions? On the proceeds only, right? I mean, well, but it says then to enforce the lien, upon the party against who their clients may have such suits. So first of all, we were required to serve the notice on the adverse party, not our client. The act itself says you serve the adverse party. In this case, the seller. And so one of the counsel for appellees said, well, that doesn't make sense because what are we going to do? The act says that's what you do. The act doesn't say, but you've got to wait when it's properly. And that's because the seller is on notice. Your action, your suit can then be filed against the seller in this case. So LaSalle Bank, the trust that holds a hickory, you can go after them. You chose not to. But the act doesn't say that your remedy is limit to suing that adverse party, the seller. In fact, second counsel, Mr. Anderson, said. Is this the only party you have to serve and that's not who you're restricted to suing? It doesn't say that's who you're restricted to suing. All right. It says attaches to the property. And I submit impressed upon the property, if we use catheter word, and the act itself attaches. I submit, once again, it's unique, it's different. As you said. It trumps the Conveyance Act and all realty in Illinois should be subject to a lawyer's lawsuit in perpetuity. The Conveyance Act does not apply to every lien interest. There is nothing in the Conveyance Act by its terms that says attorneys' liens are covered. So all these cases that they cite, no case, there is no reported decision that I have found or anyone has cited in the State of Illinois where an attorney had a lien on real property and some appellate or the Illinois Supreme Court said the Illinois Conveyance Act applies. No such decision has been discovered. And I submit because it doesn't apply because, as the Anthony case said, there's not a requirement in every situation when you have an interest in property that you follow the Illinois Conveyance Act. We didn't. We weren't required to. It attached to the property. Our claim and interest is superior to the others. And had they done some ordinary due diligence, which would be something for the trial court to find, they would have discovered it. Thank you, Your Honor. Thank you. This case will be taken under advisement. Thank you for your briefs and the arguments. This court will be adjourned. Thank you.